# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

JAMES A. BARTHOLOMEW AND LIGHTHOUSE
MANAGEMENT GROUP, INC. AS RECEIVER FOR
LAKELAND CONSTRUCTION FINANCE, LLC,

        PLAINTIFFS,

V.

AVALON CAPITAL GROUP, INC.,

        DEFENDANT.

CIVIL NO. 09-1279 (MJD/AJB)


**ORDER & MEMORANDUM**

---

Edward T. Wahl, Michael M. Krauss, Theresa H. Dykoschak, and Jane E. Maschka, **FAEGRE & BENSON LLP**, 90 South 7th Street, Suite 2200, Minneapolis, MN 55402-3901, for Plaintiffs.

David M. Schiffman and Meredith Jenkins Laval, **SIDLEY AUSTIN LLP**, One South Dearborn Street, Chicago, IL 60603; James F. Bendernagel, Jr., **SIDLEY AUSTIN LLP**, 1501 K Street Northwest, Washington, DC 20005; Jason R. Asmus, Richard D. Anderson, and Richard G. Mark, **BRIGGS & MORGAN, PA**, 80 South 8th Street, Suite 2200, Minneapolis MN 55402, for Defendant.

This matter is before the Court, Chief Magistrate Judge Arthur J. Boylan, on Plaintiffs' Motion to Compel Discovery [Docket No. 44]. A hearing was held on the motion on March 23, 2011. Michael M. Krauss and Edward T. Wahl appeared on behalf of Plaintiffs. David M. Schiffman, Richard Anderson, and Meredith Jenkins Laval appeared on behalf of Defendant.

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel Discovery [Docket No. 44] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  To the extent that Defendant has not previously done so, on or before May 13, 2011, Defendant shall produce the following information to Plaintiffs:

    a.  All communications and documents from Defendant's privilege log that were created or altered between January 1, 2007, and October 31, 2008, with Nicole Blakely as author, recipient, or carbon-copy recipient, that address potential legal claims by Lakeland's creditors, including Bank of Scotland and Bank of Montreal;

    b.  All communications and documents from Defendant's privilege log that were created between January 1, 2007, and October 31, 2008, with Nicole Blakely as author, recipient, or carbon copy recipient, that address the termination of Bob Machacek and the related litigation;

    c.  All communications and documents from Defendant's privilege log that were created or altered between January 1, 2007, and October 31, 2008, with Nicole Blakely as author, recipient, or carbon copy recipient, that address the forensic audit and retention of Deloitte and Touche;

    d.  Unredacted versions of documents that Defendant previously redacted on relevance grounds and for which Defendant does not have a claim of privilege.

2. On or before May 13, 2011:

    a. Defendant shall submit directly to the Court's chambers for in-camera review all documents and communications from Defendant's privilege log that were created or altered between January 1, 2007, and October 31, 2008, with Nicole Blakely as author, recipient, or carbon copy recipient, that generally address or involve Lakeland, that are not otherwise ordered to be disclosed to Plaintiff.

    b. Defendant shall submit directly to the Court's chambers for in-camera review all documents and communications from Defendant's privilege log that were created or altered between January 1, 2007, and October 31, 2008, that address potential legal claims by Lakeland's creditors, including Bank of Scotland and Bank of Montreal, that address the forensic audit and retention of Deloitte and Touche, and that address the termination of Bob Machacek and the related litigation, and that are not otherwise ordered to be disclosed to Plaintiff.

    c. Defendant shall also provide directly to this Court's chambers a memorandum detailing the basis for Defendant's assertions of privilege on the documents and communications ordered for in-camera review. Defendant shall provide to Plaintiffs a list of those documents that Defendant is submitting for in-camera review.

    d. In lieu of producing documents and communications for in-camera review, Defendant may produce documents and communications directly to Plaintiff.

3. Within five days of Defendant's submission of documents and communications for in-camera review, Plaintiffs shall provide directly to this Court's chambers a memorandum

detailing their position on Defendant's assertion of privilege for the documents ordered for in-camera review.

4.  Plaintiffs' motion is denied in all other respects.

5.  The attached memorandum is incorporated herein.


Dated:＿＿＿＿＿4/28/11＿＿＿＿＿＿＿

                                       s/ Arthur J. Boylan＿＿＿＿＿＿
                                    Chief Magistrate Judge Arthur J. Boylan
                                    United States District Court
                                    For the District of Minnesota


## <u>MEMORANDUM</u>

## I.    BACKGROUND

### a.  Allegations in the Complaint

Plaintiffs James A. Bartholomew (Bartholomew) and Lighthouse Management Group, Inc. (Lighthouse Management), as Receiver for Lakeland Construction Finance, LLC (Lakeland),[1] bring their Amended Complaint against Defendant Avalon Capital Group, Inc.[2] (Avalon), asserting the following claims: avoidance of fraudulent transfer made with actual intent to defraud creditors, in violation of Minn. Stat. § 513.44(a)(1); avoidance of fraudulent transfer, in violation of Minn. Stat. § 513.45(b); recovery of illegal purported equity transfer pursuant to Minn. Stat. § 322B.54; breach of fiduciary duty arising out of the  purported equity transfer; breach of fiduciary duty arising out of purported debt transfer; and unjust enrichment. [Docket No. 27.]

---

[1] Lakeland is a Minnesota limited liability company with its principal place of business in Eagan, Minnesota.
[2] Avalon is a Delaware corporation with its principal place of business in La Jolla, California.

4

Plaintiffs' claims are based on the following allegations: Lakeland was in the business of making loans to developers and home builders. (Am. Compl. ¶ 5, Jan. 25, 2010.) Lakeland's operations were financed through bank debt, asset securitization, capital contributions, loans by Avalon (its principal shareholder), and net earnings. (*Id.* at ¶ 5.) Avalon owned all of Lakeland's voting units. (*Id.* at ¶¶ 2, 7.) "Lakeland is described in offering materials as being a 'portfolio company of Avalon Capital Group, Inc., a San Diego-based private investment office for Ted Waitt, founder and former Chairman of computer maker Gateway, Inc.'" (*Id.* at ¶ 10.) "Avalon appointed itself the sole "Manager" of Lakeland." (*Id.* at ¶ 12.)

Plaintiffs further allege as follows: In May 2007, Lakeland had the following facilities[3]:

| Bank | Amount and Facility Type |
|---|---|
| LaSalle Bank National Assoc. | $387,000,000 senior credit facility |
| BMO Capital Markets | $150,000,000 non-recourse securitization facility[4] |
| Anchor Bancorp, Inc. | $5,000,000 financing facility |

(*Id.* at ¶ 14.) On or about June 2007, Lakeland entered into a $30 million supplemental credit facility with Bank of Scotland plc. (*Id.* at ¶ 15.) In September 2007, Lakeland entered into a credit and security agreement (senior credit agreement) with the Bank of Scotland and a term loan and security agreement (term loan) with Bank of Scotland (USA), Inc. (*Id.* at ¶ 1.) Under the senior credit agreement, Lakeland could borrow up to $425 million. (*Id.* at ¶ 17.) Under the term loan, Lakeland could borrow up to $70 million. (*Id.* at ¶ 19.) Lakeland's indebtedness under

---

[3] Within the context of this case, a "facility" is an "[a]n agreement between a bank and a company that grants the company a line credit with the bank." OXFORD DICTIONARY OF FINANCE AND BANKING, 160 (4th ed. 2008).

[4] This facility was between BMO Capital Markets and LCF Funding I, LLC, an entity wholly owned by Lakeland. (Am. Compl. at ¶ 14.)

the term loan was secured by a security interest in substantially all of Lakeland's assets, subordinate to the security interest provided for in the senior credit agreement. (*Id.* at ¶ 20.)

Plaintiffs further alleges as follows:

> Avalon caused Lakeland to borrow $360 million under the Senior Credit Agreement on September 4, 2007. Lakeland used the $360 million, among other purposes, to repay all amounts outstanding under the LaSalle Facility, the $5 million financing facility, and the $30 million supplemental credit facility. In October, November, and December 2007, Lakeland made certain repayments and borrowings to adjust its outstanding indebtedness. It also borrowed a small additional amount, resulting in a total amount outstanding of $360,108,041 on December 31, 2007.
>             . . . .
> Avalon caused Lakeland to borrow the full amount of $70 million available under the BOS (USA) Term Loan on September 28, 2007.

(*Id.* at ¶¶ 18-21.)

Plaintiff further alleges that on September 28, 2007, Avalon caused Lakeland to direct Bank of Scotland (USA) to transfer $67.5 million of the term loan proceeds to Avalon. (*Id.* at ¶¶ 22-25.) On November 30, 2007, Lakeland defaulted on the senior credit agreement. (*Id.* at ¶ 26.) As of December 31, 2007, Lakeland defaulted on the term loan. (*Id.* at ¶ 27.)

**b. Motion to Compel**

On April 16, 2010, Plaintiffs served Defendant with Requests for Production. Defendant's production has been ongoing, with production of the last installment of its privilege log being in February 2011. Defendant's privilege log lists nearly 2,000 documents that Defendant has withheld from production based upon attorney-client privilege and work-product protection. Defendant also redacted 370 documents based on relevance. Plaintiffs bring the present motion seeking an order compelling Defendant to produce the aforementioned documents. Defendant opposes the motion.

In addition to the redacted documents, Plaintiffs have grouped Defendant's claims of privilege into the following categories of documents[5]:

1. Documents addressing potential legal claims by Lakeland's creditors, including Bank of Scotland and Bank of Montreal;

2. Documents addressing the termination of Bob Machacek and the related litigation;

3. Documents addressing the forensic audit and retention of Deloitte and Touche;

4. Documents generally addressing or involving Lakeland.

This Court will utilize these categories for ease of analysis.

Much of the present discovery dispute involves Nicole Blakely. Blakely is an attorney admitted to practice in the State of California and is the General Counsel of Avalon. (Aff. Blakely ¶ 2, Mar. 15, 2011.) From May 9, 2006, to July 7, 2008, Blakely served as the Secretary of Lakeland.

Between January 2007 and October 2008, Blakely participated in numerous communications with Lakeland employees. (*See* Aff. Watkins, Ex. V, Feb. 24, 2011.) In these communications Blakely reviewed documents on behalf of Lakeland, provided legal advice to Lakeland, accepted questions from Lakeland concerning legal issues, provided dispute resolution advice to Lakeland for matters dealing with third-parties, requested documents and information in order to assist her in her legal analyses, and copied Lakeland employees on communications in which she provided legal advice to Avalon's employees. (*See generally id.*) These communications included discussions of the following topics: personnel issues at Lakeland, the termination of Bob Machacek, the facilities with Bank of Scotland and the default on those facilities, contract negotiations, how Lakeland operates in relation to Avalon, the hiring of

---

[5] Following the hearing on the present motion, the parties reached a resolution on certain categories of documents and therefore, those categories of documents and the arguments related to those categories of documents are not considered within this Order and Memorandum.

consultants, Lakeland's financial situation, and the use of forensic accountants following default on the Bank of Scotland's facilities. (*See generally id.*)

Blakely's communications with Lakeland employees contained the following notice: "This E-mail (including attachments, if any) is a confidential communication from an attorney. It may be exempt from disclosure under attorney-client privilege . . . ." (*See e.g., id.* at Ex. V, L0823964.) Some e-mails sent from Lakeland employees to Blakely, included the header "ATTORNEY CLIENT PRIVILEGE." (*See, e.g.*, *id.* at Ex. V, L0551221.) Many of the communications were collectively among employees at Lakeland, employees at Avalon, and Blakely. (*See, e.g.*, *id.* at Ex. V, L0701908.) Blakely reviewed documents after they were reviewed by Lakeland's outside counsel. (*Id.* at QQ.)  Furthermore, Lakeland's outside counsel also copied Blakely on e-mails and deferred to Blakely's judgment on legal matters. (*See* Aff. Watkins, at Ex. X.)

The communications between Blakely and Lakeland unambiguously reflect that Lakeland's employees believed that they could and should contact Blakely in order to obtain legal advice. The communications among Blakely, Lakeland, and Avalon unambiguously reflect that Avalon was aware the Blakely was providing Lakeland with legal advice.

In October 2008, Lakeland and Avalon entered into a "Joint Defense and Attorney Client Privilege" agreement, which was signed by Blakely; Bruce Recher, counsel for Avalon and Lakeland for the Machacek action; Hart Kuller, counsel for Lakeland; William Murray, President of Lakeland; Anthony Bassett, CFO of Lakeland; and Frank Berman, counsel for Avalon and Lakeland for the Machacek action. (Aff. Blakely, Ex. A, Mar. 15, 2011.) The agreement "confirm[ed]" that communications on the following subject matters "have been conducted under a joint, joint defense, or co-client relationship between Avalon and [Lakeland] and that

such conversations were . . . protected by the attorney-client privilege, [and] the work-product doctrine":

> 1) [Lakeland's] default on its obligations under the credit facilities relating to Lakeland . . . (collectively "Credit Facilities"):
>> (a) The Credit and Security Agreement dated as of September 4, 2007 . . . among Lakeland, the lenders party thereto, and Bank of Scotland ("BoS") as administrative agent;
>> (b) The Term Loan and Security Agreement dated as of September 27, 2007 . . . among Lakeland, the lenders party thereto, and BoS (USA) Inc. ("BoS USA") as administrative agent; and
>> (c) The Amended and Restated Receivables Financing Agreement dated as of December 22, 2006 . . . among LCF Funding I, LLC . . . as borrower, Lakeland as servicer, the lenders and funding agents party thereto, and BMO Capital Markets Corp. as administrative agent.
>
> 2) The Complaint for a Receiver filed by BoS on September 12, 2008;
>
> 3) The Complaint filed against [Lakeland] and Avalon on April 24, 2008 by Robert Machacek.

In connection with this agreement, Blakely wrote that "[e]veryone has noted that the privilege memorialized herein exists regardless of this agreement." (Aff. Watkins, Ex. U, Feb. 24, 2011.)

Blakely states in her affidavit, offered in opposition to Plaintiffs' motion, as follows:

> On multiple occasions, I informed officers of Lakeland . . . that I was having confidential discussions with Avalon in order to provide legal advice to Avalon, and that these discussions were being kept confidential from Lakeland. I also informed Lakeland's officers that I was not sharing with Lakeland the content of my confidential discussions with Avalon about matters relating to Lakeland, including Lakeland's defaults under its credit facilities and potential claims against Avalon by Bank of Scotland, BoS (USA) Inc., BMO Capital Markets Corp. and Bank of Montreal.

(Aff. Blakely ¶ 5, Mar. 15, 2011.) Blakely also stated in her affidavit that all statements in Defendant's memorandum in opposition to Plaintiffs' motion concerning "the scope of her representation of Lakeland are true and correct to the best of [her] recollection." (*Id.* at ¶ 9.)

## II.     DISCUSSION

Plaintiffs make the following arguments in support of their motion: First, Defendant has waived its claims of attorney-client privilege and work-product protection because its privilege log is inadequate. Second, Defendant cannot assert attorney-client privilege. Third, Defendant has waived its claim of work-product protection. Fourth, Defendant cannot unilaterally redact documents based upon a claim of irrelevance. Finally, Defendant should be ordered to pay to Plaintiffs reasonable fees for bringing the present motion. For the reasons set forth below Plaintiff's motion is granted in part and denied in part.

### a.   Privilege Log

Plaintiffs contend that Defendant has waived any claim of attorney-client privilege or work-product protection by failing to provide an adequate privilege log. Defendant contends that their privilege log is more than adequate.

There is no "privilege log" rule.  Rather, the privilege log is a convention of modern legal practice designed to conform with the requirements of Federal Rule of Civil Procedure 26(b)(5), which states:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>     (i) expressly make the claim; and
>     (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Defendant's privilege log contains the following categories: Author/Source, Recipient(s), CC(s), Date, Description, Privilege Asserted, and Beginning of Bates Number of Produced Version. Defendant's privilege log also notes whether named individuals are attorneys. An example of a description within Defendant's privilege log is as follows: "Email from N. Blakely

[attorney] to E. Duffey-Long and T. Waitt forwarding status report of N. Blakely's [attorney] legal activities on behalf of Avalon for June 2007 (with attachment)." (Privilege Log No. 231.)

Contrary to Plaintiffs' contentions, Defendant's privilege log is not boilerplate or uninformative. Defendant's privilege log satisfies the requirements of Fed. R. Civ. P. 26(b)(5). Defendant was not required to specifically state whether or not withheld documents touched upon the issues in "Joint Defense and Attorney Client Privilege" agreement. Therefore, Defendant did not waive its claim of attorney-client privilege or work-production protection by failing to produce an adequate privilege log.

### b. Attorney-Client Privilege

"In [a] diversity case, [federal courts] apply federal law to resolve work product claims and state law to resolve attorney-client privilege claims." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000). Defendant seems to argue that California's law of attorney-client privilege is controlling. (Def.'s Mem. 14, Mar. 16, 2011.) Plaintiffs cite Eighth Circuit Court of Appeals' precedent for the elements of attorney-client privilege, but then their brief cherry pick case authority with no apparent regard for the concept of controlling precedent. Neither party offered any briefing on why its proffered law of attorney-client privilege should control this matter.

In *Pritchard-Keang Nam Copr. v. Jaworski*, the Eighth Circuit Court of Appeals stated in dicta that "Rule 501 does not . . . specify which state's privilege rules control." 751 F.2d 277, 281 n.4 (8th Cir. 1984). The Eighth Circuit Court of Appeals in *Jaworski* stated that "[u]nder the *Erie* doctrine, a federal court must apply the forum's conflict of laws rules" to determine which

state's privilege law controls a given case.[6] *Id.* But, because the Eighth Circuit Court of Appeals has not yet found a conflict between states' privilege laws, the court of appeals has applied the law of the forum state, *see Jaworski*, 751 F.2d at 281 n.4, and *cf. Harlan v. Lewis*, 982 F.2d 1255, 1258 (8th Cir. 1993), or applied the law of both states. *See Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000).

Attorney-client privilege in Minnesota and California is governed by statute. *See* Minn. Stat. § 595.02, subd. 1(b); Cal. Evid. Code §§ 950-62. While the statutes differ in their form, neither party directed this Court to any conflict in the substance of the statutes or their applications by the courts of Minnesota and California, respectively. Therefore, this Court will apply the law of both states, but will cite California law for ease of analysis.

Under California law, "the client" may refuse to disclose "a confidential communication between client and lawyer if the privilege is claimed by . . . the holder of the privilege." Cal. Evid. Code § 954(a). A "lawyer" is "a person authorized or reasonably believed by the client to be authorized, to practice law in any state . . . ." *Id.* at § 950. A "client" is a "person who, directly or through an authorized representative, consults with a lawyer for the purpose of . . . securing legal service or advice from him in his professional capacity." *Id.* at § 951.

Plaintiffs make three arguments regarding Defendant's claim of attorney-client privilege. First, Plaintiffs argue that Defendant cannot assert a claim of attorney-client privilege for those documents where Defendant's attorney was only a carbon-copy recipient. Second, Plaintiff argues that, as a fiduciary to Lakeland, Defendant cannot assert attorney-client privilege on those matters arising out of the fiduciary duty. Third, Plaintiffs argue that Defendant cannot assert attorney-client privilege because Avalon and Lakeland were joint clients with common interests.

---

[6] The Minnesota Supreme Court applies RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139 (1971) to determine which state's privilege laws apply. *State v. Heaney*, 689 N.W.2d 168, 175 (Minn. 2004).

For the reasons set forth below, this Court concludes that Avalon cannot claim attorney-client privilege for all communications and documents from Defendant's privilege log, that were created or altered between January 1, 2007, and March 1, 2008, with Blakely as an author, recipient, or carbon-copy recipient, and that pertain to issues of common interests between Lakeland and Avalon.

### i.  Carbon-Copy Recipient

Plaintiffs contend that Defendant cannot assert attorney-client privilege for all communications in which Blakely was not an author or direct recipient and, instead, was a carbon-copy recipient. It is well established that a party cannot make a communication privileged simply by including an attorney in the communication. Nevertheless, the mere use of the carbon copy feature on e-mail software is not prima facie evidence that the communication is not a *privileged* communication. The use of the carbon copy feature may be evidence that the communication is not a privileged communication, but it is not decisive one way or the other. This issue is best resolved by an in-camera review of the communications at issue.

### ii.  Fiduciary Exception

Plaintiffs argue that Defendant cannot assert attorney-client privilege with respect to the aforementioned document categories because Defendant had a fiduciary duty to Lakeland. Under California law, "courts . . . are not free to create new privileges as a matter of judicial policy and must apply only those which have been created by statute." *OXY Resources California LLC v. Superior Court*, 115 Cal. App. 4th 874, 888 (Cal. Ct. App. 2004). Thus, this court cannot add an "unwritten exception[] to existing statutory privileges." *Id.* at 889. California law does not contain a fiduciary exception to the attorney-client privilege. *See Opus Corp. v. International Business Machines Corp.*, 956 F. Supp. 1503, 1509 (D. Minn. 1996) (discussing that there is no

partnership fiduciary exception to Minnesota's attorney-client privilege law). Therefore, this Court will not apply a fiduciary exception in the present case.

### iii.   Joint-Client and Community-of-Interest Privilege

Under California law, "[t]he party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney-client relationship." *Costco Wholesale Corp. v. Superior Court*, 47 Cal.4th 725, 733, 219 P.3d 736, 741, 101 Cal. Rptr. 3d 758, 764 (Cal. 2009). "Once that party establishes facts necessary to support a prima facie claim of privilege," the opponent has the burden of proof to establish "that the privilege does not . . . apply." *Id.* California's law of attorney-client privilege contains the following exception:

> [w]here two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest).

Cal. Evid. Code § 962; *see also Croce v. Superior Court of City and County of San Francisco*, 21 Cal. App.2d 18, 19 (Cal. App. 1937) (stating that parties waive their right to privilege when they agree to joint representation); *see generally Opus Corp. v. International Business Machines Corp.*, 956 F. Supp. 1503, 1506-08 (D. Minn. 1996) (discussing "Common Interest" exception within the context of Minnesota's attorney-client privilege law).

In *Sky Valley Limited Partnership*, the court enumerated factors to consider when applying Cal. Evid. Code § 962. 150 F.R.D. 648, 652-53 (N.D. Cal. 1993). The *Sky Valley Limited Partnership* court also stated that, when considering the application of Cal. Evid. Code § 962, "courts should take fully into account the ultimate policy rationales for the attorney-client

privilege, the joint client privilege, and the joint client exception to the privilege." *Id.* at 653. One of "[t]he principal purposes of the joint client exception to the privilege, on the other hand, [is] . . . to discourage abuses of fiduciary obligations and to encourage parties to honor any legal duties they had to share information related to common interests." *Id.* at 653.

Consistent with *Sky Valley Ltd. Partnership*'s direction, this Court makes the following global observation: Blakely could have engaged in the practice of law in a manner that would have avoided the present discovery dispute. *See* Robert B. Cummings, *Get Your Own Lawyer! An Analysis of In-House Counsel Advising Across the Corporate Structure after Teleglobe*, 21 Geo. J. Legal Ethics 683, 695-96 (2008) (stating that "[i]n-house legal departments should act as if the department is an outside law firm retained by the [subsidiary] corporation"). But, the record reflects that at all times relevant Blakely was practicing law to extent intended by Defendant Avalon. Avalon had the duties of good faith, due care, and loyalty to Lakeland and Blakely's actions aided in the management of Lakeland. *See* Minn. Stat. § 322B.69. As Lakeland's manager, Avalon benefited from the arrangement between its General Counsel and Lakeland. Avalon raised no objections to the arrangement until the present moment.

Turning to the specific statutory elements, this Court first considers if there is an attorney-client relationship between Lakeland and Blakely, and Avalon and Blakely. "It is the intent and conduct of the parties which is critical to the formation of the attorney-client relationship." *Hecht v. Superior Court*, 192 Cal. App. 3d 560, 565-66, 237 Cal. Rptr. 528, 531 (Cal. App. 1987). There is no dispute that Avalon was Blakely's client on all matters relating to Lakeland. There is no question that Lakeland knew that Blakely was Avalon's attorney. Based upon the record, this Court concludes Lakeland was Blakely's client within the meaning of Cal. Evid. Code § 954(a) and it was reasonable for Lakeland to infer that it was Blakely's client. *See*

*Bank of West v. Valley Nat. Bank of Ariz.*, 132 F.R.D. 250, 252 (N.D. Cal. 1990) (holding that Cal. Evid. Code § 962 was inapplicable where the party wishing to assert the exception did not make a showing that it was a client).  This Court takes particular note of the facts that Blakely was general counsel to Lakeland's controlling shareholder and manager; Lakeland regularly sought and received legal advice from Blakely; there is no evidence that Blakely refused to provide Lakeland with legal advice on any topics; and there is no evidence to suggest that Blakely was acting without the assent of Avalon when representing Lakeland. Thus, based upon this record, this Court concludes that Blakely was acting as counsel both for Avalon and Lakeland.

Being clients of the same attorney alone is insufficient to trigger the joint-client exception. Cal. Evid. Code § 962. This Court must also consider if Lakeland and Avalon were joint-clients on matters of common interest.  The communications provided to this Court and the "Joint Defense and Attorney Client Privilege" agreement support that Blakely provided legal advice to Lakeland on the following topics: the potential legal claims by Lakeland's creditors, the termination of Bob Machacek and the related litigation, and the potential forensic audit and retention of Deloitte and Touche. These matters were of common interest to both Lakeland and Avalon.  The "Joint Defense and Attorney Client Privilege" agreement in particular evinces the parties' recognition that they shared a common interest with respect to these issues.  The fact that Lakeland had outside counsel at various times does not destroy these common interests, especially where there is no evidence that appointment of outside counsel in any way limited Blakely's involvement with Lakeland and the record reflects that Lakeland's outside counsel deferred to Blakely. Therefore, this Court concludes that Lakeland and Avalon were clients who consulted Blakely upon matters of common interest.

The only evidence to suggest that Blakely's representation of Lakeland was limited is Blakely's self-serving affidavit.[7] This Court finds Blakely's affidavit unavailing for the following reasons: First, the voluminous communications that this Court reviewed do not in any way comport with Blakely's assertion that she informed Lakeland's officers that the scope of her representation was limited.  Second, Blakely, Avalon, and Lakeland failed to adhere to any of the formalities that would suggest that the scope of Blakely's representation was limited. As stated in *In re Teleglobe Communications Corp.*: "By taking care not to begin joint representation except when necessary, to limit the scope of joint representation, and seasonably separate counsel on matters in which subsidiaries are adverse to the parent, in-house counsel can maintain sufficient control over the parent's privileged communications." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 374 (3rd Cir. 2007).  The record contains no evidence that Blakely or Avalon took care that Blakely would not begin joint representation, limited the scope of Blakely's representation, or appointed truly separate counsel for Lakeland.  Specifically, the record contains no documents concerning dual representation or scope of representation, as are required by the California Rules of Professional Conduct, which governed Blakely's actions. *See, e.g.,* Cal. R. Prof. Conduct 3-310, 3-600(D)-(E). Some evidence of adherence to these Rules would support that Lakeland knew that Blakely's legal advice was limited in scope and that such legal advice did not create a common interest. Third, the communications produced by Plaintiff support that Blakely represented herself to third-parties as working on behalf of both Avalon and Lakeland's common interests.

Defendant contends that it is Plaintiffs' obligation to make a particularized showing for each communication that Blakely was doing work for both Lakeland and Avalon. Defendant is

---

[7] The "Joint Defense and Attorney Client Privilege" agreement is not evidence of limited representation because Blakely's e-mail to Lakeland specifically states that she did not believe the agreement was necessary.

correct to the extent that Plaintiffs bear the burden of showing the exception to the attorney-client privilege provision.  But, a conclusion that Lakeland and Avalon were joint clients on matters of common interest obviates the need for a particularized showing when the communications arose out the common interest during the period of joint representation. The policy underlying section 962 is clear—both parties benefit from the open flow of information to counsel because counsel can have a global view of the matters of common interest, and therefore, neither party should be able to withhold that information because each party should have been equally enriched by it. It does not matter whether or not the communication was only made to one party or the other if the matter concerned the common interest. The alternative—which is advocated by Defendant—would allow Client A to unscrupulously benefit from Client B's forthright disclosures, but Client B would not benefit from Client A's purported confidential disclosures. This is an untenable application of section 962.

Therefore, this Court concludes that Plaintiff has made a particularized showing that the potential legal claims by Lakeland's creditors, the termination of Bob Machacek and the related litigation, and potential forensic audit and retention of Deloitte and Touche were all matters of common interest.

Nevertheless, this Court does not conclude that Plaintiffs have made a particularized showing that all communications between Blakely and Avalon addressing or involving Lakeland, i.e. category four documents, were communications on matters of common interest. Therefore, this Court shall review these documents in camera. Furthermore, the record does not support that these common interests were shared or joint representation continued beyond October 31, 2008. Therefore, this Court shall limit Defendant's required disclosure to documents created or altered between January 1, 2007, and October 31, 2008. Furthermore, beyond Blakely's involvement,

the record does not provide any information about the extent to which other attorneys working for Avalon worked as Blakely's agents on the matters of common interest or independently provided legal advice to Lakeland.  Therefore, this Court does not reach any conclusion on those documents for which Defendant has claimed attorney-client privilege and which do not involve Blakely as a sender, recipient, or carbon-copy recipient. These documents will be considered in this Court's in-camera review.

### c.  Work Product

The work-product doctrine was established in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385 (1947), and is now expressed in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Simon*, 816 F.2d at 400; *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002) ("This Court applies federal law to work product claims."). Federal Rule of Civil Procedure 26(b)(3) generally precludes discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  The Eighth Circuit Court of Appeals has stated that the work-product doctrine "should be 'applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis.'" *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002) (quoting *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir.1997)).

The documents that were created by Blakely and arise out of the joint clients' common interest do not constitute work product within the meaning of Fed. R. Civ. P. 26(b)(3) because those documents were not prepared "by or for *another* party or its representative." (Emphasis added.) Those documents were prepared for both Avalon and Lakeland's joint benefit by virtue of their joint client status and common interests articulated above. Beyond Blakely's involvement, the record does not provide any information about the extent to which outside

19

counsel for Avalon worked as Blakely's agents on the matters described above or independently provided legal advice to Lakeland. Therefore, this Court does not reach any conclusion on those documents that do not involve Blakely as a sender, recipient, or carbon-copy recipient and for which Defendant has claimed work-product protection. These documents will be reviewed as part of this Court's in-camera review.

### d. Redactions

Defendant unilaterally redacted documents on the basis that the redacted information was irrelevant to any claims or defenses in this proceeding. Plaintiffs move for production of the unredacted versions of the documents. For the reasons set forth below, Plaintiffs' motion is granted with respect to these documents.

Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request.[8] It is a rare document that contains only relevant information.  And irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information. Fed. R. Civ. P. 34 concerns the discovery of "documents"; it does not concern the discovery of individual pictures, graphics, paragraphs, sentences, or words within those documents. Thus, courts view "documents" as relevant or irrelevant; courts do not, as a matter of practice, weigh the relevance of particular pictures, graphics, paragraphs, sentences, or words, except to the extent that if one part of a document is relevant then the entire document is relevant for the purposes of Fed. R. Civ. P. 34. This is the only interpretation of Fed. R. Civ. P. 34 that yields

---

[8] In so holding, this Court echoes the considerations within *In re Medeva Securities Litigation*, No. 93-4376-KN AJWX, 1995 WL 943468, at *3 (C.D. Cal. May 30, 1995), *David v. Alphin*, No. 3:07cv11, 2010 WL 1404722, at *7-*8 (W.D.N.C. Mar. 30, 2010), and *Evon v. Law Offices of Sidney Mickell*, Civ. No. S-09-0760 JAM GGH, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010).

"just, speedy, and inexpensive determination[s] of every action and proceeding." Fed. R. Civ. P. 1.

This interpretation is buttressed by the fact that the Federal Rules of Civil Procedure do not grant parties the power to unilaterally redact information on the basis of relevance. The Federal Rules of Civil Procedure explicitly provide when redaction may be used. *See* Fed. R. Civ. P. 5.2 (discussing redaction within the context of filings with the Court); *see also* D. Minn. LR 5.5 (discussing redaction of transcripts). The Federal Rules of Civil Procedure also explicitly provide a method for a party to object to a request for production of documents. *See* Fed. R. Civ. P. 34(b)(2). Rule 34(b)(2)(B)-(C) states: "For each item or category, the response must . . . state an objection to the request, including the reasons" and "[a]n objection to part of a request must specify the part and permit inspection of the rest." This method for objection does not explicitly include the option of producing redacted documents. In addition, the Federal Rules of Civil Procedure provide parties with the option to bring a motion for a protective order. Fed. R. Civ. P. 26(c). Thus, a party seeking the power to unilaterally redact documents for relevance should request leave to redact those portions that the party contends are irrelevant. Furthermore, there is a Protective Order [Docket No. 40] in the present case, which could be utilized to limit the dissemination of any confidential information.

Therefore, for the reasons set forth above, Defendants must produce unredacted versions of the documents that Defendant previously produced with redactions based solely on relevance.